# EXHIBIT A

FILED

18 JUL 27 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 18-2-18587-4 SEA

SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

|  |  |
|---|---|
| MARIO RODRIGUEZ,<br><br>         Plaintiff;<br>     v.<br><br>THE BOEING COMPANY,<br><br>         Defendant. | NO.  18-2-18587-4<br><br>FIRST AMENDED<br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff MARIO RODRIGUEZ, by and through his attorney of record, Stockwell Law Firm PLLC, hereby alleges as follows:

## I.     PARTIES

1.1     Plaintiff Mario Rodriguez (hereinafter "Plaintiff" or "Mr. Rodriguez") is and has been a resident of the State of Washington and of King County at all times material to the events described herein.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 1*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

1.2     Defendant the Boeing Company (hereinafter "Boeing" or "Defendant"), at all times material hereto, has been corporation doing business in King County, Washington.

1.3     The defendant named above, and/or its agents acted in an unlawful manner, both intentionally and/or negligently, by depriving Plaintiff of clearly established, statutorily-protected rights to be free from discrimination and tortious in the workplace.

1.4     Defendant and/or its agents further acted in a manner that was deliberately indifferent, wanton, willful, and which reflected a reckless disregard for Plaintiff's well-being by constrictively and wrongfully discharging Plaintiff in direct violation of a public policy of the State of Washington.

## II.     JURISDICTION & VENUE

2.1     The acts alleged herein primarily occurred in King County, Washington.

2.2     As a court of general jurisdiction, the King County Superior Court has personal and subject matter jurisdiction over the claims alleged.  RCW § 2.08.010.  Plaintiff has arranged for timely personal service of process on the defendant's registered agent in Washington State pursuant to RCW § 4.28.080(9).

## III.     NATURE OF EMPLOYER

3.1     Defendant was, at all relevant times, engaged in trade and commerce in King County, Washington, and fits the definition of employer within the meaning of RCW §§ 49.60.040. & 51.08.070.

## IV.     FACTS

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 2*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.1     In June 2014, Mario Rodriguez began working in Information Technology at Boeing, during which he enjoyed three years of positive performance reviews and meaningful work.

4.2     In March of 2017, Mr. Rodriguez interviewed for, and was hired by Laura Ward, Second level manager, for an internally posted position of Systems and Data Analyst.

4.3     On April 5, 2017, Mr. Rodriguez received a no post internal job offer to be an IT Access Administrator' with the explicit understanding that a declination of any no post job offer is considered a resignation from Boeing.  Mr. Rodriguez formally protested this bait and switch of job offer to Boeing Human Resources representative Gemma Barajas on April 6, 2017.  After April 7, 2017, Mr. Rodriguez escalated the issue to Sierra Makepeace in HR, but there was ultimately no resolution.  On April 7, 2017, Mr. Rodriguez began his job as an IT Access Administrator at Boeing Identity and Access Management under Laura Ward.

4.4     On numerous occasions, including specifically, August 4, 2017 and August 10, 2017, co-worker Karon Wilmot made disparaging remarks, to Mr. Rodriguez regarding Latinos, LGBTQ persons and Mr. Rodriguez's aesthetic suitability for a homosexual person Ms. Wilmot was acquainted with.

4.5     On August 16, 2017, Mr. Rodriguez attempted to report these incidents to his manager Laura Ward.  Ms. Ward had just returned from vacation, and at that time, Laura Ward prohibited Mr. Rodriguez from enumerating the series of events at that meeting.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 3*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.6     On August 18, 2017, during a conference call, Mr. Rodriguez gave Ms. Ward the details of the aforementioned derogatory incidents with Ms. Wilmot.  Ms. Ward claimed she did not know what to do in these situations.  Mr. Rodriguez asked to be moved away from Ms. Wilmot immediately.  Ms. Ward did not grant Mr. Rodriguez's request to move his desk, and instead attempted to make a bargain with Mr. Rodriguez to instead work on a new project with coworker Denise Mills.  Ms. Ward then asked Mr. Rodriguez to take the weekend to think about "what else she could do to make this situation better.  Ms. Ward ended the conversation by claiming she just received an emailed response from HR on how to proceed. She informed Mr. Rodriguez that he should file an Ethics complaint.  Ms. Ward then shared a story regarding another manager and an ethics complaint.  She concluded the story by telling Mr. Rodriguez that the ethics complaint in that case ended with a negative outcome for the complaining employee.  Ms. Ward told Mr. Rodriguez that, "it's probably not a good idea to file an ethics complaint."

4.7     On August 19, 2017, Mr. Rodriguez filed Ethics Complaint # 755771, claiming hostile actions by Karon Wilmot and Laura Ward.

4.8     On August 25, 2017, Sonja Ramirez emailed Mr. Rodriguez informing him his case had been accepted by Boeing EEO and that Kathy Cho JD would be the investigator handling his complaint.

4.9     On August 30, 2017, Ms. Ward informed Mr. Rodriguez that she would not allow him to perform work in support of team member Denise Mills. When Mr. Rodriguez asked why, she said because he had applied for internal positions and that "it would be a

waste of department resources" if Mr. Rodriguez were to move on to the new position within Boeing.

4.10    On September 6, 2017, at or around 9:00AM, Mr. Rodriguez received a call from Katie Frisbie informing him she would be the investigator on his complaint.

4.11    On September 11, 2017, Karon Wilmot made racist remarks regarding and Indian national to Andrea Lee or another coworker via phone.  Ms. Wilmot mocked the Indian surname and said "with that last name he probably wasn't born in Jersey. You know what I mean!"

4.12    On September 13, 2017, during a regular one-on-one meeting with Mr. Rodriguez and Ms. Ward, Ms. Ward went from maintaining professional composure to yelling at the top of her lungs at Mr. Rodriguez.  She yelled in part, "I am so frustrated with you."

4.13    On or about September 14, 2017, Mr. Rodriguez attempted to report new remarks by Ms. Wilmot about Mr. Rodriguez's suitability for her gay friend to Sonya Ramirez and Katie Frisbie.  Mr. Rodriguez also reported the September 13, 2017 incident with Ms. Ward where she began yelling wildly at Mr. Rodriguez about "being frustrated" with Mr. Rodriguez.  Sonya Ramirez noted the incidents.  A separate conversation with Katie Frisbie yielded confrontational and abrasive language by Ms. Frisbie directed toward Mr. Rodriguez, during which she refuted all Mr. Rodriguez's concerns.

4.14    On September 15, 2017, at the insistence of Katie Frisbie, Mr. Rodriguez submitted a modified recap.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 5*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.15    On September 19, 2017, Mr. Rodriguez found out his parent was ill and he sought medical leave through the Reed group due to the nature of the illness.

4.16    On September 20, 2017, Ms. Ward reversed course and informed Mr. Rodriguez that he would start training to support Denise Mills twice a week.  Mr. Rodriguez asked Ms. Ward about her prior comments regarding his not being allowed to do this because he was seeking job placement within Boeing.  Ms. Ward denied ever saying that and then concluding the meeting.  Ms. Ward then shared, without solicitation, that she had not been in contact with ethics.

4.17    On September 22, 2017, Ms. Frisbie asked Mr. Rodriguez for the names of people who sit near his work area. Mr. Rodriguez provided those names.  He also asked Ms. Frisbie if she could have him moved away from Ms. Wilmot, as her continued discriminatory remarks against all races and more recently homeless people are becoming untenable.

4.18    On September 27, 2017, Mr. Rodriguez emailed Ms. Frisbie inquiring about what stage the investigation was in, and what to expect now that she's had chance to review his initial filing, secondary notes.  On September 28, 2017, Katie informed Mr. Rodriguez that the investigation time averages about 30 days from her receiving his signed statement on September 15, 2017.

4.19    Also, on September 28, 2017, and later that night (9/29/17 Friday 1:05AM) Mr. Rodriguez emailed Ms. Frisbie six pages of detailed notes and corresponding email attachments regarding his one-on-one meetings with his manager Ms. Ward for the dates of 8/18, 8/23, 8/30, 9/6, 9/13, and 9/20.  These notes were reporting incidents/behaviors by Ms.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 6*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

Ward since Mr. Rodriguez's informing her of Ms. Wilmot's racist and discriminatory remarks and filing Ethics Complaint # 755771.  Mr. Rodriguez asked Ms. Frisbie in that email to review his new information and help him understand if Ms. Ward is in violation of EEO rules and if those actions merited further review.

4.20    On September 29, 2017, around 9:00AM Ms. Frisbie called Mr. Rodriguez and told him that she received his new notes.  Ms. Frisbie informed Mr. Rodriguez at that time that his complaint and subsequent submissions of material information for Ethics Complaint # 755771 were deemed investigated thoroughly and closed with zero findings.  She then informed Mr. Rodriguez of his right to appeal her decision.

4.21    On September 30, 2017, Mr. Rodriguez went on emergency leave to care for a parent.

4.22    On October 4, 2017, Ms. Ward announced her retirement TBD in the 4th quarter and would be personally recruiting her replacement.

4.23    On October 6, 2017, Mr. Rodriguez submitted a four-page appeal for Ethics Complaint # 755771 detailing reported events and asking for a thorough review of his tertiary submission of September 28, 2017 to Ms. Frisbie.

4.24    On October 12, 2017, Ms. Ward ordered the removal of Mr. Rodriguez's system credentialing essential to perform his job functions.  These credentials take approximately two months to gain or regain if expired.

4.25    On December 12, 2017, Ms. Ward completed Mr. Rodriguez's Performance Management Review with inaccurate negative scores.  Ms. Ward provided no supporting documentation for those scores.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 7*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.26    On December 20, 2017, Mr. Rodriguez received a verbal job offer from manager Matt Pham for Data Analyst in Boeing Digital Aviation with a proposed start date of April 6, 2018.

4.27    On December 21, 2017, Mr. Rodriguez returned to his current organization and met with Ms. Ward's replacement Peter Flor.  Mr. Rodriguez asked for Mr. Flor's procedural support in Mr. Rodriguez's release to Boeing Digital Aviation.  Mr. Flor refused Mr. Rodriguez's release and cited that Mr. Rodriguez had not earned the privilege to move on.  Mr. Flor cited a poor Performance Review and length of working days in their current organization as reasons.

4.28    On January 3, 2018 and January 4, 2018, Mr. Rodriguez reviewed his 2017 Performance

4.29    Management review by Ms. Ward Mr. Flor.  Mr. Rodriguez provided Mr. Flor with a time-line and emailed correspondence refuting the claims on his Performance Management Evaluation.  Mr. Rodriguez asked Mr. Flor to override his negative Performance Management Evaluation review as he had discretion to do so.  Mr. Flor refused and instead suggested they schedule a conference with his now former manager, Ms. Ward and Senior Leader Brian Jeffords to clarify Mr. Rodriguez's Performance Management Review.  Mr. Flora claimed the practice of calling former employees was normal, and that his manager, Mr. Jeffords instructed him to proceed in this manner.  Mr. Rodriguez asked Mr. Flor if he was allowed to resume his job duties.  Mr. Rodriguez also asked again to be moved away from Ms. Wilmot.  Mr. Flor said he would consider allowing me to resume my duties.  Mr. Flor did not address Mr. Rodriguez's request to be moved away from Ms. Wilmot.  Mr. Flor

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 8*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

ultimately refused to allow Mr. Rodriguez to resume his job duties and wholly restore his credentials.  Mr. Rodriguez was instead assigned ad-hoc menial tasks in support of Ms. Wilmot and Ed Asombrado.

4.30    On January 5, 2018, Mr. Rodriguez filed a Boeing sponsored Alternative Dispute Resolution ADR # 769110.  The dispute in question was Mr. Flor's refusal to remove Ms. Ward's inaccurate comments and scoring on Mr. Rodriguez's Performance Review. Mr. Rodriguez compiled a twenty-four-page granular refute of Ms. Ward's inaccurate scoring on his Performance Review. Mr. Rodriguez submitted this claim with irrefutable Boeing Data and Emails supporting his near zero error rate in IT functions and positive contributions to his organization.

4.31    In meetings with Mr. Flor on 1/5, 1/23 and 1/30, Mr. Rodriguez insisted that Mr. Flor reinstate all of his system access so that he could resume all his previous job functions as before his FMLA leave.

4.32    Also, on January 5, 2018, Mr. Rodriguez reported the blocking of his job transfer to Digital Aviation, the negative Performance Review, and Mr, Flor's prohibiting Mr. Rodriguez's resumption of his duties to Joanna Kester, Senior HR Manager, alerting her that these actions appear be retaliatory in nature and merit investigation

4.33    On January 17, 2018, Mr. Rodriguez reported his negative Performance Review and Mr. Flor's prohibiting Mr. Rodriguez from resuming his duties as actions to Jeremy Lehman JD, Boeing Ethics Investigator, stating these actions appear to be retaliatory in nature and merit investigation.

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.34    On or about January 17, 2018, Mr. Flor, at Mr. Asombrado's insistence, allowed for Mr. Rodriguez's partial reinstatement of credentials related to the assigned ad-hoc tasks in support of Ed Asombrado.

4.35    On January 30, 2018, Tippi Hall, Ethics Appeals investigator called Mr. Rodriguez, and and informed him that Ethics Appeal for Ethics Complaint # 755771 was found to be baseless and unsubstantiated.  Mr. Rodriguez asked if Ms. Ward had been made to resign as a result of administrative fallout.  Tippi Hall denied that Ms. Ward was forced to resign as a result of administrative fallout.

4.36    On January 30, 2018, Mr. Rodriguez received and accepted a formal offer for employment in Boeing Digital Aviation as a System and Data Analyst for Matt Pham with a start date of April 6, 2018.

4.37    On February 5, 2018, Mr. Rodriguez's smart phone, his primary mode of work communication, was shut off without notice or explanation.  Mr. Rodriguez called Verizon Wireless and Boeing Tech Support regarding his Boeing phone and was told it was ordered shut off by an "unnamed manager."

4.38    On February 6, 2018, Mr. Rodriguez formally reported Ms. Ward's adverse credential removal and Mr. Flor's refusal to allowing Mr. Rodriguez to resume his normal job functions, and the shut off of his Boeing smart by a manager to Octavia King and Sonya Ramirez of the Ethics Intake Department Ethics Complaint # 772509.

4.39    On or about February 7, 2018 Mr. Rodriguez contacted Boeing HR recruiter, Jane Anne Howard, regarding his job, offer for Systems and Data Analyst, for start date approval status.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 10*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.40     On February 7, 2018, Sonya Ramirez from Ethics suggested that Mr. Rodriguez contact Executive Leader, Kevin Meehan, to report these on goings.

4.41     Between February 6-8, 2018, Mr. Rodriguez reported these matters via email to Jeremy Lehman, Tippi Hall, Danielle Donovan, Joanna Kester, Octavia King, and Sonya Ramirez.

4.42     On February 8, 2018, Mr. Rodriguez reported these matters to Kevin Meehan, Senior Executive, and supplied him with case numbers and synopsis of events since 2017.

4.43     On February 14, 2018, Mr. Rodriguez fell ill.  He emailed Mr. Flor that he was not well and then went to the doctor.  Mr. Rodriguez provided Mr. Flor with a doctor's note for his absences the week of February 14, 2018.

4.44     On February 18, 2018, Mr. Rodriguez's doctor, after further evaluation, ordered him to stop working.  At that point, Mr. Rodriguez applied for Medical Leave.  He was granted FMLA with a return to work date of May 4, 2018.

4.45     On 3/16 Reed Group denied Mr. Rodriguez's FMLA and phoned him. On this phone call Reed Group appeared to scrutinize his leave by having Lisa from the Reed Group reading out loud personal details about his medical condition.  She informed Mr. Rodriguez that his doctor had not sent the necessary paperwork.  Mr. Rodriguez insisted that they had and faxed the Reed Group fax e-confirmation provided by Dr. Sobia Moghis.

4.46     On March 20, 2018, Reed Group approved Mr. Rodriguez's short-term disability for 3/20 through 3/25

4.47     On April 20, 2018, Reed Group denied Mr. Rodriguez's short-term leave from 3/26/18- 6/13/18 citing Dr. Moghis not providing the requested information. Per Dr.

FIRST AMENDED
COMPLAINT FOR DAMAGES – 11

**Stockwell Law Firm PLLC**
1001 4ᵗʰ Ave #3200
Seattle, WA 98154
(253) 459-4818

Moghis,' clinical notes were provided in a timely manner.  Mr. Rodriguez called the Reed Group to investigate and asked them to please reach out to his doctor as the Reed Group had made a mistake previously.

4.48    By April 30, 2018, Reed Group received more clinical notes from Dr. Moghis regarding Mr. Rodriguez's continued disability.  Reed Group sent out another denial for short-term disability from 3/26/18-6/13/18 as insufficient in supporting a functional impairment.

4.49    Between February, 2018 and May 4, 2018 of Mr. Rodriguez's FMLA leave, Matt Pham, Hiring Manager at Boeing Digital Aviation, made contact with Mr. Rodriguez asking about his well-being and solicited a meeting with Mr. Rodriguez off work premises on the evening of March 22, 2018 for explicit reasons.  During that meeting, Mr. Pham wanted to know Mr. Rodriguez's anticipated return to work date and shared his efforts to force Mr. Flor via a purported HR process to release Mr. Rodriguez to Boeing Digital Aviation.

4.50    During this same meeting Mr. Pham enticed Mr. Rodriguez's prompt return and assured him that a transition to his department is certain.  Mr. Pham also indicated that if Mr. Rodriguez came back to work on after April 13, 2018, he would not have to report back to Mr. Flor at all.  Mr. Pham then shared an email from his smartphone dated February 21, 2018 indicating Mr. Flor would release Mr. Rodriguez to the Digital Aviation organization on April 13, 2018.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 12*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

4.51    Mr. Pham continued to message Mr. Rodriguez after their meeting asking about his well-being and asking if he had determined a return to work date.  After April 13, 2018 had passed, Mr. Pham continued to message Mr. Rodriguez regarding his status.

4.52    On April 18, 2018, Mr. Pham and Mr. Rodriguez had a text exchange where Mr. Rodriguez was informed that he would need to report to Mr. Flor on his return to work date before any transfer to his department would be allowed.

4.53    On May 24, 2018, Mr. Pham texts Mr. Rodriguez again regarding my well-being.

4.54    On May 1, 2018, Mr. Pham made contact with Mr. Rodriguez again regarding his medical condition and when he would be returning to work.

4.55    On May 2, 2018, Mr. Rodriguez saw Dr. Reyes, Psychiatrist, regarding the hostile work environment and his well-being.  Mr. Rodriguez explained his situation in detail.  Dr. Reyes recommended Mr. Rodriguez not return to work at Boeing as it was continuing to affect him physically and emotionally.

4.56    On May 3, 2018, Mr. Rodriguez emailed Joanna Kester, Danielle Donovan and Heidi Capozzi notifying them of his forced separation due to Boeing's constructive discharge tactics.

4.57    On June 30, 2018, Mr. Rodriguez was awarded unemployment benefits due to his forced separation from Boeing.

## V.    FIRST CAUSE OF ACTION – SEX DISCRIMINATION

5.1    Plaintiff re-alleges Paragraphs 1.1 through 4.57 and incorporates them herein as if set forth in full.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 13*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

5.2     Defendant and/or their agents wantonly, willfully, and intentionally discriminated against Mr. Rodriguez on the basis of his sex in relation to employment promotions/lateral assignments and disciplinary actions.

5.3     On their face, the actions of Boeing's agents constitute provable illegal discrimination on the basis of Mr. Rodriguez's race and perceived sexual orientation.

5.4     Both Title VII, and Washington's Law Against Discrimination ("WLAD"). RCW § 49.60.030(1) covers illegal sex discrimination, and RCW § 49.60.030(2) lays out that an aggrieved person has a civil remedy at law for damages, to include attorney's fees in a court of competent jurisdiction.

5.5     In Washington State it is an unfair practice for any employer:

(1) To refuse to hire any person because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, unless based upon a bona fide occupational qualification: PROVIDED, That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved: PROVIDED, That this section shall not be construed to require an employer to establish employment goals or quotas based on sexual orientation.
(2) To discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability.

(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability: PROVIDED, That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of employment on the sex of employees where the commission by

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 14*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

regulation or ruling in a particular instance has found the employment practice to be appropriate for the practical realization of equality of opportunity between the sexes.

RCW §49.60.180.

5.6     In Washington State, the standard to prove a prima facie case of sex discrimination follows a version the familiar *McDonnell Douglas/Burdine* formula.

5.7     Washington State courts repeatedly advise that Washington's Law Against Discrimination is to be liberally construed to deter and eradicate discrimination.   *Burchfiel v. Boeing Corp.* 149 Wn. App. 468, 205 P.3d 145, review denied 166 Wn.2d 1038, 217 P.3d 783 (2009).  In order for a plaintiff to make a prima facie showing of employment discrimination alleging disparate treatment under Washington's Law Against Discrimination, he must prove four elements:

> (1) [T]he employee is a member of a protected class, (2) the employee is qualified for the employment position or performing substantially equal work, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not in plaintiff's protected class received more favorable treatment.

*Matson v. United Parcel Serv., Inc.*, 872 F. Supp. 2d 1131, 1145 (W.D. Wash. 2012).

5.8     It is not in dispute that Mr. Rodriguez is Latino, and therefore a member of a protected class.  Based on the comments of Karen Wilmot.  *See* Rodriguez Exhibit A & B at Bates # 000003 & 000010, it will not be difficult to establish that for purposes of the discriminatory actions, Boeing agent(s) perceived Mr. Rodriguez's sexual orientation to be homosexual.  It will also not be difficult to establish that Mr. Rodriguez was both qualified for, and offered, the System and Data Analyst position in Matt Pham's group, and that but for the actions of Laura Ward, Peter Flor, and Karen Wilmot,

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 15*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

Mr. Rodriguez would have been in that position.  In addition, Mr. Rodriguez was de facto subsequently demoted at a result of the same's actions.  *See Id*. at 000002-000008. Finally, in an organization the size of Boeing, it will not be difficult to find numerous similarly situated employees outside of the protected class and perceived protected class which applies to Mr. Rodriguez here, who were treated more favorably under similar circumstances.  I.e., Mr. Rodriguez can establish each prong of a prima facie case on his discrimination and retaliation claim.

5.9     The defendant does then have the opportunity to proffer a legitimate non-discriminatory reason ("LNDR") for their adverse employment action(s):

5.10    If … [Plaintiff] makes this prima facie showing, he must also show that the … [Defendant's] legitimate reasons for its actions were pretextual.  *Marin v. King Cty.*, 194 Wn. App. 795, 811, 378 P.3d 203, 213 (2016), *review denied sub nom. Marin v. King Cty., WA.*, 186 Wn.2d 1028, 385 P.3d 124 (2016).

5.11    Here, Boeing cannot proffer an LNDR that can pass the smell test.  In short, Mr. Rodriguez was offered a position away from his tormentors, those tormentors removed his credentials, and provided him with a dishonest performance review in order to keep him in the position where they could further torment and retaliate against him on the bases of his protected class status.  That torment and retaliation is what actually caused Mr. Rodriguez's constructive termination.  I.e., any LNDR proffered is simply a pretext for the underlying adverse employment action(s).

5.12    On these facts, and authority, Boeing will lose a jury trial and be ordered to pay Mr. Rodriguez monetary damages in amount to be determined by that jury.

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 16*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

## VI.    SECOND CAUSE OF ACTION – CONSTRUCTIVE WRONGFUL TERMINATION IN VIOLATION OF A PUBLIC POLICY

6.1     Plaintiff re-alleges Paragraphs 1.1 through 5.12 and incorporates them herein as if set forth in full.

6.2     On their face, the actions of Boeing's agents constitute the commission of this tort claim.  In Washington State to prove this tort a plaintiff must show:

> 1) the existence of a clear public policy (the clarity element); 2) that discouraging the conduct in which she engaged would jeopardize the public policy (the jeopardy element); 3) that her public-policy-linked conduct was a substantial factor in (i.e. the cause of) … decision to discharge her (the causation element); and 4) that employers generally do not have an 'overriding justification' for wanting to use the activity as a factor affecting the decision to discharge (the absence of justification element).

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 971 (9th Cir. 2002).

6.3     In a more recent case, The Washington State Supreme Court sitting *En Banc*, recognized an even broader interpretation of the wrongful termination tort, and the category of qualifying public policies:

> Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation, (3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct. *Gardner,* 128 Wash.2d at 935–36, 913 P.2d 377.

*Danny v. Laidlaw Transit Servs., Inc.*, 165 Wn.2d 200, 208, 193 P.3d 128, 132 (2008).

6.4     Here, the State of Washington has a clear public policy of protecting persons from race and sexual orientation discrimination in their employment, so the first element is not in question.  Next, the jeopardy element is also not in dispute, as not protecting

*FIRST AMENDED
COMPLAINT FOR DAMAGES – 17*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

individuals from race and sexual orientation discrimination in employment would indeed place the policy itself in jeopardy.  All of the evidence here, points to a fact pattern, where, Mr. Rodriguez was offered a position away from his tormentors, those tormentors removed his credentials, and provided him with a dishonest performance review in order to keep him in the position where they could further torment and retaliate against him on the bases of his protected class status.  That torment and retaliation is what actually caused Mr. Rodriguez's constructive termination.  These facts prove the substantial factor prong.  Finally, based on these facts, Boeing will also not be able to proffer an overriding justification for their actions here that passes the smell test.  Boeing will inevitably defend itself by saying that they never terminated Mr. Rodriguez, and he currently has a position waiting for him, but Exhibit A at Bates # 000008 shows clearly that Mr. Rodriguez informed Danielle Donovan and Heidi Capozzi that his Psychiatrist, Dr. Reyes, advise he not return to work, and he considered his departure a forced separation.  Finally, the position waiting for him is the same position, with same person(s) that created the hostile work environment for Mr. Rodriguez in the first place. It is painfully clear that the intent was constructive termination on a discriminatory basis, which these Boeing agents did indeed accomplish.

6.5     On these facts, and authority, Boeing's actions constitute a constructive discharge of Mr. Rodriguez, and this was done with discriminatory animus.  As such, Boeing will lose a jury trial on this tort claim and be ordered to pay Mr. Rodriguez monetary damage in an amount to be determined by that jury.

## VII.   PRAYER FOR RELIEF

Wherefore, the Plaintiff prays that this Court grant the following relief:

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 18*

Stockwell Law Firm PLLC
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

7.1     Declare that the defendant's acts herein are violations of the relevant statutes, tort law and relevant case law;

7.2.     Permanently enjoin the Defendants from engaging in the acts described herein;

7.3     Award damages, plus interest in the sum of **THREE HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($385,000)**, as well as any other relief the Court deems appropriate pursuant to the alleged tort and statute(s).

7.4     Award Plaintiff's reasonable costs and attorney's fees incurred in bringing this action, pursuant to the alleged tort and statute(s).

7.5     Provide any other relief that the Court determines is just and equitable.

DATED this 26th day of July 2018.

Respectfully Submitted,

Christopher J. Stockwell
Attorney for Plaintiff
WSBA # 50001
1001 Fourth Avenue #3200
Seattle, WA 98154
(253) 459-4818

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 19*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that I, Christopher Stockwell, on the date stated below, caused to be served a true and correct copy of the foregoing Complaint and Summons on the below-listed Defendant by the method(s) noted:

☒   *via Personal Service:*

**Defendant's Registered Agent for Service in Washington State**

Corporation Service Company
300 Deschutes Way SW STE 304
Tumwater, WA 98501

DATED this 26th day of July 2018, in Seattle, Washington.

_____
Christopher J. Stockwell

*FIRST AMENDED*
*COMPLAINT FOR DAMAGES – 20*

**Stockwell Law Firm PLLC**
1001 4th Ave #3200
Seattle, WA 98154
(253) 459-4818