THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIO RODRIGUEZ, | CASE NO. C18-1213-JCC |
| Plaintiff, | ORDER |
| v. | |
| THE BOEING COMPANY, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained below.

I.      BACKGROUND

Plaintiff resigned from his employment with Defendant in May 2018. (*See* Dkt. No. 32 at 40–41 (resignation letter).) At the time, Plaintiff was on voluntary leave with an outstanding offer to move into a new position within Defendant. (*Id.*) Plaintiff asserts that, before commencing his leave, Defendant took discriminatory adverse employment actions that made Plaintiff's working conditions untenable, prompting him to resign. (*See generally* Dkt. No. 1-2.) He filed his First Amended Complaint with the King County Superior Court (Dkt. No. 1-2),

ORDER
C18-1213-JCC
PAGE - 1

1    which Defendant removed to this Court. (*See* Dkt. No. 1.) Defendant now seeks summary

2    judgment on the two claims asserted in the complaint: discrimination and unlawful discharge.

3    **II.      DISCUSSION**

4              **A.      Legal Standard**

5              "The court shall grant summary judgment if the movant shows that there is no genuine

6    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7    Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute

8    about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

9    verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

10   In deciding whether there is a genuine dispute of material fact, the Court must view the facts and

11   justifiable inferences to be drawn from them in the light most favorable to the nonmoving party.

12   *Id.* at 255. It is therefore prohibited from weighing the evidence or resolving disputed issues in

13   the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

14             "The moving party bears the initial burden of establishing the absence of a genuine issue

15   of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to

16   carry its initial burden of production, the nonmoving party has no obligation to produce anything,

17   even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*

18   *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving

19   party properly supports its motion, the nonmoving party "must come forward with 'specific facts

20   showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

21   *Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment

22   is appropriate against a party who "fails to make a showing sufficient to establish the existence

23   of an element essential to that party's case, and on which that party will bear the burden of proof

24   at trial." *Celotex*, 477 U.S. at 322. However, "very little evidence" is needed "to survive

25   summary judgment in a discrimination case, because the ultimate question is one that can only be

26   resolved through a searching inquiry—one that is most appropriately conducted by the

1   factfinder, upon a full record." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as*

2   *amended*, 784 F.2d 1407 (9th Cir. 1986) (internal quotations omitted). But a plaintiff must offer

3   more than "uncorroborated and self-serving" testimony to create "'a sufficient disagreement to

4   require submission to a jury.'" *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)

5   (quoting *Anderson*, 477 U.S. at 251–52).

6       **B.      Discrimination**

7       Plaintiff alleges discrimination based both on his sexual orientation and race. (*See* Dkt.

8   No. 1-2 at 14–17.) Title VII and the Washington Law Against Discrimination ("WLAD") make

9   it unlawful for an employer to discriminate on the basis of an employee's membership in any of

10  several protected classes, including race, national origin, and sexual orientation. 42 U.S.C.

11  § 2000e–2(a)(1); Wash. Rev. Code § 49.60.180; *see Bostock v. Clayton County, Georgia*, 140 S.

12  Ct. 1731, 1741 (2020) (sexual orientation).

13      A plaintiff may establish a *prima facie* case of discrimination either through "a

14  presumption arising from the factors such as those set forth in *McDonnell Douglas*, or by more

15  direct evidence of discriminatory intent." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220

16  (9th Cir. 1998), *as amended* (Aug. 11, 1998); *see Blackburn v. State*, 375 P.3d 1076, 1080

17  (Wash. 2016) (noting that "Washington courts often look to federal case law on Title VII when

18  interpreting the WLAD"). "Direct evidence is evidence which, if believed, proves the fact [of

19  discriminatory animus] without inference or presumption." *Godwin*, 150 F.3d at 1221 (quoting

20  *Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994)). If a plaintiff lacks direct

21  evidence, courts look to the *McDonnell Douglas* burden-shifting framework to analyze both Title

22  VII and WLAD discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

23  802–04 (1973) (Title VII claim); *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 529 (Wash.

24  Ct. App. 2005) (WLAD claim).

25      Within the *McDonnell Douglas* framework, to establish a *prima facie* case under Title

26  VII, absent direct proof of discriminatory intent, a plaintiff must show that (1) he is a member of

ORDER
C18-1213-JCC
PAGE - 3

1    a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment

2    action, and (4) the defendant treated him differently from a similarly situated employee who does

3    not belong to the same protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d

4    1018, 1028 (9th Cir. 2006). Under the WLAD, the plaintiff must show that: (1) he belongs to a

5    protected class; (2) he was treated less favorably in the terms or conditions of his employment

6    (3) than a similarly situated, non-protected employee, and (4) the plaintiff and the non-protected

7    comparator were doing substantially the same work. *See Washington v. Boeing Co.*, 19 P.3d

8    1041, 1048 (Wash. Ct. App. 2000).

9         If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to

10   articulate a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas*, 411 U.S.

11   at 802–04; *Hines*, 112 P.3d at 529. If the defendant does so, the plaintiff must then prove, by a

12   preponderance of the evidence, that the reason asserted by the defendant is a mere pretext. *See*

13   *McDonnell Douglas*, 411 U.S. at 802–04; *Hines*, 112 P.3d at 529.

14        Plaintiff does not assert that he suffered discrimination based on his *actual* sexual

15   orientation but on his *perceived* sexual orientation. (*See* Dkt. No. 1-2 at 4, 6, 16; *see also* Dkt.

16   No. 35 at 58–63 (Plaintiff's testimony regarding comments made by a co-worker suggesting she

17   thought he was homosexual).) Only one Washington court has squarely addressed the issue, and

18   it found that this is not a protected class under the WLAD. *See Davis v. Fred's Appliance, Inc.*,

19   287 P.3d 51, 58 (Wash. App. 2012) ("We therefore conclude that 'perceived sexual orientation'

20   is not a protected class and therefore [the plaintiff] is not a member of a protected class.").

21   Plaintiff's sexual orientation discrimination claims are barred as matter of law.

22        Turning to his allegations of racial discrimination, according to Plaintiff, it is "undisputed

23   that he is a Latin American Male." (Dkt. No. 37 at 17; *see also* Dkt. No. 35 at 59 (describing

24   himself as Latino).) The only direct evidence Plaintiff presents of racial discrimination is his

25   testimony that a coworker, Karon Wilmot, made harassing comments regarding "Latin American

26   males leav[ing] their babies" and being "bad fathers." (Dkt. No. 35 at 55; *see also* Dkt. no. 35 at

ORDER
C18-1213-JCC
PAGE - 4

58 (Plaintiff's testimony that no other individual at work made comments regarding his race).)

Defendant asserts that Ms. Wilmot was merely a coworker—not a supervisor. (Dkt. No. 31 at 24.) Thus, though these comments certainly betray racist sentiment, a non-supervising coworker's behavior generally cannot form the basis of a discrimination claim *See Jenkins v. Palmer*, 66 P.3d 1119, 1121 (Wash. Ct. App. 2003) (citing *Brown v. Scott Paper Worldwide Co.*, 20 P.3d 921, 926 (Wash. 2001)). But Plaintiff testified that his direct supervisor was often absent from the office, leaving Ms. Wilmot, as the more senior employee, in a supervisory role. (*See* Dkt. No. 37-1 at 16.) He also testified that Ms. Wilmot took the lead on the project he worked on. (*Id.*) This evidence is sufficient to establish genuine dispute of material fact regarding Ms. Wilmot's role.

However, Plaintiff provides no direct evidence of a causal connection between Ms. Wilmot's alleged remarks and any adverse employment action he suffered. *See DeHorney v. Bank of Am. Nat. Tr. and Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (requiring a nexus between offensive remarks and a decision maker's adverse employment actions). The Court will, therefore, apply the *McDonnell Douglas* burden shifting approach.

Plaintiff must make a *prima facie* showing, among other things, that (a) he suffered an adverse employment action and (b) was treated differently from a similarly situated employee who did not belong to the same protected class. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). He presents no evidence supporting either contention.

Regarding an adverse employment action—Plaintiff's complaint is replete with perceived injustices that Defendant allegedly inflicted. (*See generally* Dkt. No. 1-2.) But his briefing on Defendant's motion for summary judgment focuses on just three actions: Defendant's unwillingness to physically separate his workspace from Ms. Wilmot's, Defendant's 2017 negative review of Plaintiff's performance, and Defendant's initial reluctance to approve Plaintiff's transfer to a new position within the company. (Dkt. No. 37 at 18–19.) None qualify as adverse employment actions.

1    According to Plaintiff, his "inability to be moved to a different seating arrangement" is

2    "in and of itself " an "adverse employment action." (Dkt. No. 37 at 19.) But Plaintiff provides no

3    legal authority for this assertion. (*See generally id.*) Nor would the Court expect that he could.

4    To establish cognizable harm under the WLAD, for example, an adverse employment action

5    must have a significant impact on an employee. As Washington's Court of Appeals has

6    described:

7        'Not every employment decision amounts to an adverse employment action,' even
         decisions that negatively impact an employee. An adverse employment action is
8        generally limited to tangible employment actions that constitute a 'significant
         change in employment status, such as hiring, firing, failing to promote,
9        reassignment with significantly different responsibilities, or a decision causing a
         significant change in benefits.' An adverse employment action 'must involve a
10       change in employment conditions that is more than an inconvenience or alteration
         of job responsibilities' and must produce 'a material employment disadvantage.'
11

12   *Simmons v. State*, 2015 WL 3488927, slip op. at 5 (Wash. Ct. App. 2015) (unpublished) (quoting

13   *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Strother v. S. Cal. Permanente Med.*

14   *Grp.*, 79 F.3d 859, 869 (9th Cir.1996); *Kirby v. City of Tacoma*, 98 P.3d 827, 833 (Wash. Ct.

15   App. 2004)). "'Petty slights, minor annoyances, and simple lack of good manners,' or personality

16   conflicts or snubbing by supervisors and co-workers are not materially adverse actions." *Byrne v.*

17   *Wash. State Univ.*, 2007 WL 2572312, slip op. at 4 (E.D. Wash. 2007) (citing *Burlington N. &*

18   *Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Defendant's decision to not physically

19   separate Plaintiff's workspace from Ms. Wilmot's is not an adverse employment action.

20   While a negative performance review could be an adverse employment action, it is

21   undisputed that Plaintiff abandoned his job while the appeal of his performance review was

22   pending. (*See* Dkt. Nos. 1-2 at 10-11, 37 at 8.) Therefore, it cannot constitute an adverse

23   employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 929–30 (9th Cir. 2000) (negative

24   performance review cannot constitute an adverse employment action if the "evaluation could

25   well have been changed on appeal"). Moreover, Plaintiff never offered legal argument on this

26   issue in his opposition brief, effectively conceding it. *See Colman v. City of Seattle*, 2006 WL

ORDER
C18-1213-JCC
PAGE - 6

1    1842978, slip op. at 4 (W.D. Wash. 2006).[1]

2        Finally, the Court strains to understand how Defendant's initial reluctance to approve

3    Plaintiff's transfer to another position within the company could constitute an adverse

4    employment action when Plaintiff ultimately received his desired transfer. Defendant presents

5    uncontroverted evidence that the delay lasted at most *two weeks*, and throughout this time

6    Plaintiff was on voluntary leave, so he suffered no adversity from this delay. (*See* Dkt. Nos. 1-4,

7    33 at 28–30, 35 at 143–44, 147, 162–68, 176.)

8        Plaintiff fails to make a *prima facie* showing that he suffered an adverse employment

9    action. Nor does he present any evidence that he was treated less favorably than a similarly

10    situated, non-protected employee. (*See generally* Dkt. No. 37.) Accordingly, summary judgment

11    is GRANTED to Defendant on Plaintiff's discrimination claim.

12        **C.**      **Unlawful Discharge**

13        Plaintiff alleges that he was wrongly discharged in violation of public policy. (*See* Dkt.

14    No. 1-2 at 18–19.) It is undisputed, though, that Plaintiff resigned from the company. (*See*

15    *generally* Dkt. Nos. 31, 37.) Therefore, to assert an unlawful discharge claim, he must first

16    establish that he was forced to resign, *i.e.*, constructively discharged. *See Peiffer v. Pro-Cut*

17    *Concrete Cutting & Breaking Inc.*, 431 P.3d 1018, 1031 (Wash. Ct. App. 2018). A constructive

18    discharge occurs if "working conditions [were] so difficult or unpleasant that a reasonable person

19    in the employee's shoes would have felt compelled to resign." *Boeing Co.*, 19 P.3d at 1049.

20        Plaintiff's only evidence of constructive discharge is his own testimony regarding Ms.

21    Wilmot's objectionable comments and his inability to find a position within the company

22    commensurate with what he viewed his skills and expertise warranted. (*See generally* Dkt. No.

23

---

24        [1] Moreover, even if Plaintiff had established a *prima facie* case of employment
discrimination based upon the results of his performance review, Defendant presents unrebuted

25    evidence that the action was not pretextual. (*See* Dkt. No. 35 at 90–96 (performance review),
141–49 (Peter Flor testimony), 163–70 (Danielle Donovan Testimony), 176–77 (Katie Frisbie

26    testimony).

1   37 at 20–24.) But Defendant puts forth unrebutted evidence that Ms. Wilmot's comments were

2   isolated, ceased after Plaintiff complained and Defendant coached her about such comments;

3   moreover, they were not temporally proximate to Plaintiff's decision to resign. (*See* Dkt. Nos. 33

4   at 6–12; 35 at 57–62.) As a matter of law, these conditions were not so intolerable that a jury

5   could find they could support a claim based on constructive discharge. *See, e.g.*, *Brooks v. City of*

6   *San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000); *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th

7   Cir. 1999).)

8         Accordingly, summary judgment is GRANTED to Defendant on Plaintiff's unlawful

9   discharge claim.

10   **III.   CONCLUSION**

11         For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 31) is

12   GRANTED. Plaintiff's First Amended Complaint is DISMISSED with prejudice.

13         DATED this 18th day of October 2021.

14

15

16   _____

17   John C. Coughenour
     UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26